UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONTREL GOOLSBY,

    Petitioner,

v.                                                                Case No. 8:09-cv-2136-T-23TGW

SECRETARY, Department of Corrections,

    Respondent.
                                        /

## O R D E R

Goolsby petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for armed robbery, aggravated battery, and aggravated assault. Goolsby serves twenty years in prison for the armed robbery. A thirty-year probationary term was imposed for the aggravated battery. Numerous exhibits ("Respondent's Exhibit") support the response. (Doc. 12) The respondent admits the petition's timeliness. (Doc. 12 at 4) The respondent correctly argues that the sole ground raised lacks merit.

## **FACTS**[1]

In 2005 Goolsby pleaded guilty without a plea agreement, commonly called an "open plea," to the charges of armed robbery, aggravated battery, and aggravated

---

[1] Summary of the facts taken from Goolsby's initial brief on direct appeal. (Respondent's Exhibit 2 at 1-3)

assault. In sentencing Goolsby to twenty years in prison, the court declined Goolsby's request for a youthful offender sentence.

## **STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a

conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. at 694. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A federal court must afford due deference to a state court's decision. "AEDPA prevents

defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (*citations omitted*).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Goolsby's convictions and sentence. (Respondent's Exhibit 5) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Goolsby subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 14) The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. Goolsby bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Goolsby's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 10)

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Goolsby alleges that trial counsel rendered ineffective assistance, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Goolsby must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Goolsby must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Goolsby cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent

or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Goolsby must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In determining "reasonableness," a federal petition for the writ of habeas corpus permits an independent assessment of "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" but not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In summarily denying Goolsby's motion for post-conviction relief, the state court relied on state precedent that specifically recognizes that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 10 at 3) Because the state court rejected the claim based on *Strickland*, Goolsby cannot meet the "contrary to" test in Section 2254(d)(1). Goolsby instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal petition for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).

Ground One:

Goolsby asserts a single claim of ineffective assistance of counsel, specifically that trial counsel rendered ineffective assistance by failing to properly investigate Goolsby's criminal history. The state both furnished Goolsby's counsel with a criminal score sheet that listed no convictions and offered Goolsby a sentence of seven-and-a-half years. (Doc. 1 at 7) At trial counsel's request, Goolsby affirmed the score sheet's accuracy. (Respondent's Exhibit 11 at 131) Based on Goolsby's affirmations, trial counsel advised Goolsby that he could enter an open plea in hopes of receiving a youthful offender sentence. (Respondent's Exhibit 11 at 129-30) On the day of trial Goolsby rejected the state's offer and entered an open plea.

(Respondent's Exhibit 11 at 114-15) Goolsby's juvenile convictions in Union County, which were discovered during the pre-sentence investigation, were allegedly the only reason for his twenty-year sentence. (Doc 15 at 6) Goolsby alleges that, had his counsel investigated Goolsby's criminal history, his counsel would not have advised the open plea and Goolsby would have accepted the state's offer. (Doc. 15 at 7)

Goolsby must meet the "unreasonable application" test of Section 2254(d)(1) because the post-conviction court applied state precedent that specifically relied on *Strickland*. Also, Goolsby must overcome the "doubly deferential" standard of *Strickland* and the AEDPA. *Pinholster*, 131 S. Ct. at 1410. The record shows that the post-conviction court's decision was consistent with Supreme Court precedent and not based on an unreasonable determination of facts.

The post-conviction court's deferring to trial counsel's strategic decisions is consistent with Supreme Court precedent. (Respondent's Exhibit 10 at 3) There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-689. The defendant bears the burden of proving that the representation was unreasonable under prevailing professional norms. 466 U.S. at 688-89. Goolsby cannot overcome the presumption that counsel's conduct fell within the wide range of reasonable conduct.

Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. Fair assessment of counsel's performance requires eliminating the

distorting effect of hindsight by evaluating the conduct from counsel's perspective at the time. 466 U.S. at 689. Goolsby must establish that, from his counsel's perspective, "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (*en banc*). Goolsby's post-conviction court reasonably applied *Strickland* in holding that the advice was sufficient (Respondent's Exhibit 10 at 2) and reasonably determined that defense counsel's testimony was credible.[2]

"[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Determining whether "reliance on a client's statement of his own criminal history constitutes deficient performance depends on the peculiar facts and circumstances of each case." *Dasher v. AG*, 574 F.3d 1310, 1315 (11th Cir. 2009). Goolsby fails to demonstrate that "no competent counsel" would rely on a client's assurances, which the state's criminal score sheet and lenient plea offer had corroborated. *Chandler*, 218 F.3d at 1316. Instead, Goolsby alleges:

> [H]ad he been properly advised, he would have accepted the State's original plea offer of 7.6 years. Instead, the defendant received a sentence seven times harsher than that offered by the State. Counsel's advice was not reasonable or strategic due to the large amount of time the defendant could

---

[2] Defense counsel's statements were corroborated by Goolsby's own testimony and the trial transcript. (Respondent's Exhibit 11 at 131 and 143)

receive if convicted. *See Velazquez v. State*, 2008 WL 142099 (Fla. 2d DCA 2008).[3]

Goolsby's self-serving claim relies on the benefit of hindsight instead of crafting a fair assessment to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 690

The circumstances show that counsel's advising the open plea resulted from Goolsby's lack of candor concerning his criminal history and not from advice "amount[ing] to incompetence under 'prevailing professional norms.'" *Premo v. Moore*, ___ U.S. ___, 131 S. Ct 773, 740 (2011). According to the state's preliminary score sheet, Goolsby had no juvenile record when the state offered the plea agreement.[4] Both the trial transcript and trial counsel's post-conviction testimony show that Goolsby reviewed the criminal score sheet, confirmed the score sheet's accuracy, and never disclosed to counsel his prior juvenile convictions. (Respondent's Exhibit 1 at 96 and Exhibit 11 at 131) From trial counsel's perspective, Goolsby had both no criminal history and a good chance of receiving a youthful offender sentence. Counsel reasonably relied on the same information that led the state to offer an unusually favorable plea agreement.[5] *See Dasher*, 574 F.3d at

---

[3] Goolsby's Reply to State's Response to habeas petition. (Doc. 15 at 7)

[4] Goolsby's criminal score sheet provided by the State Attorney's Office showed no juvenile arrest. (Respondent's Exhibit 1 at 43)

[5] The record shows that, in trial counsel's opinion, a bottom-of-the-guideline offer was an unusually lenient plea agreement for the state attorney prosecuting Goolsby. (Respondent's Exhibit 11 at 128-29)

- 12 -

1316. Given these circumstances and the heavy deference afforded to counsel's judgments, *Strickland*, 466 U.S. at 691, trial counsel reasonably conducted no further investigation into Goolsby's record. *See Dasher*, 574 F.3d at 1316 (holding that the decision not to investigate was reasonable because the prosecutor's initial lenient offer indicated that the defendant had a minimal criminal record).

*United States v. Pease*, 240 F.3d 938, 941-42 (11th Cir. 2001), holds that "reliance on a client's statements is [not] per se deficient performance." "This holding applies with greater force here because [the] attorney did not rely on only his client's statements, [sic] and because of the deferential standard of review. . . on this issue." *Dasher*, 574 F.3d at 1317. Consequently, the post-conviction court reasonably held that trial counsel's representation was not deficient performance.

Goolsby argued (Doc. 15 at 9) that trial counsel misinformed him about the potential penalty he faced with an open plea and that this misinformation led him to reject the state's plea offer. The trial transcript directly refutes Goolsby's allegation that trial counsel never explained the components of a youthful offender sentence. (Doc. 15 at 14 and 20) The consequences of pleading guilty in hopes of receiving a youthful offender sentence were fully explained to Goolsby by both counsel and the trial court (Respondent's Exhibit 1 at 92-94):

> COUNSEL: I want to make sure there was one issue I did explain to him. If the Court were inclined to sentence him as a youthful offender, that the judge could go below the 10-year minimum mandatory. I have told him that. So the Court indicated it's between ten and life. I did explain to him that if the Court –

THE COURT: There are no guarantees. I will find this. I want you to make sure he understands completely. He may not qualify in my mind as a youthful offender. It's a very serious crime.

COUNSEL: I understand that, Judge. What I'm saying is, I want to make sure there's no disconnect between what I told him. What I told him was youthful offender status would qualify him if the court would be willing to sentence him as youthful offender. The Court would have the discretion, although the Court would not be bound, either sentencing as youthful offender or go below that minimum mandatory, but the Court would have discretion. I want to make sure there is no disconnect between what the court has told him and what I told him.

THE COURT: So it's very clear, he's pleading guilty. I'm going to have victims in here telling me.

COUNSEL: Like I said, you can object when I go through the inquiry with him. I've asked him that question several times myself throughout the morning.

THE COURT: You have any learning disabilities or any type of disabilities of any nature or kind?

THE DEFENDANT: Can't – can't read

THE COURT: Can't read?

THE DEFENDANT: (Indicating negatively)

THE COURT: This uniform plea, acknowledgment waiver of rights form, how do you know what it says?

THE DEFENDANT: [Defense counsel] read it to me.

THE COURT: Has she promised you anything; told you what I might do?

THE DEFENDANT: (Indicating affirmatively.)

THE COURT: What did she tell you I might do?

THE DEFENDANT: If I have an open plea, you can do anything that you want.

THE COURT: From probation to life in prison or something in between. I

> want to make sure you understand this? This is very serious –
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It involves a firearm, which may make it a minimum mandatory of 10 years. Do you understand that? If I don't accept it and decide you are not youthful offender, it's 10 years minimum mandatory. I have no discretion. I want to make sure you understand that.
>
> THE DEFENDANT: Yes, sir.

The transcript provides a reasonable fact determination that Goolsby was correctly informed concerning the elements of youthful offender sentencing. The post-conviction court was objectively reasonable in finding that Goolsby's open plea was voluntary.

Further, Goolsby's claim of prejudice is speculative and not based on a reasonable probability that the outcome would have been different. First, the record does not suggest that, if Goolsby's juvenile record was disclosed, trial counsel would have insisted that Goolsby accept the state's offer. Second, Goolsby "must demonstrate a reasonable probability the plea would have been entered without the prosecution cancelling it." *Missouri v. Frye*, 132 S.Ct. 1399, 1409 (2012). Under the circumstances, the prosecution would have likely withdrawn the plea offer if Goolsby's counsel fully investigated his criminal history.[6] Lastly, Goolsby's bare

---

[6] Trial counsel testified that because Goolsby's juvenile convictions were in Union County, she could only have found them through the National Crime Information Center ("NCIC"). (Respondent's Exhibit 11 at 120) Trial counsel would have had to request the State Attorney's Office investigate Goolsby's record in the NCIC. This would have alerted the prosecution to Goolsby's numerous juvenile convictions, which would give the prosecution reason to withdraw the offer.

allegation (Doc. 15 at 6) that he would have accepted the state's offer is insufficient to establish prejudice under *Strickland*. *See Roach v. Roberts*, 373 Fed. App'x, 983, 985 (11th Cir. 2010). Goolsby's own cross-examination testimony during the post-conviction evidentiary hearing contradicts his collateral claim that he would have accepted the state's offer. (Respondent's Exhibit 11 at 144):

> MR. GOULD [State's Attorney]: And [trial counsel] advised you that potentially you had grounds to make a motion to set your plea aside.
>
> GOOLSBY: Yes, sir.
>
> MR. GOULD: And - but you chose not to take that route, correct?
>
> GOOLSBY: We agreed.
>
> MR. GOULD: Well, I'm asking you, you have the ultimate decision. You decided to go ahead with your plea and not try to have your plea set aside, right?
>
> GOOLSBY: Yes, sir.

Goolsby's pleading open was still a possible avenue to receive a youthful offender sentence despite his juvenile record. The record shows that Goolsby's misconduct while his case was pending contributed to the increased sentence. (Respondent's Exhibit 11 at 133-35) Goolsby's trial counsel testified that the trial court judge in sentencing Goolsby considered that, in trying to obtain a furlough from jail, Goolsby lied about graduating from high school. (Respondent's Exhibit 11 at 134) The pre-sentencing investigation disclosed that Goolsby neither graduated nor had the credits required to graduate. Another aggravating factor was Goolsby's arrest, while released on bond, for grand theft of an automobile in Union County.

(Respondents Exhibit 1 at 27) Therefore, the post-conviction court reasonably held that the sentence was the result of a combination of factors beyond counsel's control. (Respondent's Exhibit 10 at 3) The post-conviction court reasonably applied *Strickland* in finding that trial counsel's performance was not deficient and that Goolsby's sentence was the result of his own conduct. (Respondent's Exhibit 10 at 3)

Accordingly, Goolsby's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Goolsby and close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Goolsby is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Goolsby must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because Goolsby fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Goolsby cannot meet *Slack*'s prejudice requirement.

529 U.S. at 484. Finally, Goolsby is not entitled to appeal *in forma pauperis* because he is not entitled to a certificate of appealability.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Goolsby must pay the full $455 appellate filing fee without installments unless the circuit court allows Goolsby to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on June 25, 2012.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE